**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Roderick Sharpe, | ) | Case No. 03-04644-BGC-13 |
| | ) | |
| Debtor. | ) | |
| | | |
| Roderick D. Sharpe and | ) | |
| Linda Sharpe, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | A.P. No. 04-00250 |
| | ) | |
| Wells Fargo Home Mortgage, | ) | |
| | ) | |
| Defendant. | ) | |

This Memorandum Opinion was not submitted by the Court for publication.

**MEMORANDUM OPINION**

The three matters before the Court are:

1.      The plaintiffs' <u>Motion for Findings of Fact and Conclusions of Law</u> filed February 9, 2007, (docketed by the plaintiffs as a <u>Motion to Reconsider</u>), Proceeding No. 90;[1]

2.      The plaintiffs' <u>Motion to Certify Summary Judgment Decision as Final Order</u> filed on March 6, 2007, (docketed by the plaintiffs as a <u>Motion for Leave to Appeal</u>), Proceeding No. 96; and

3.      The defendant's <u>Motion to Strike Jury Demand</u> filed on March 1, 2007, (docketed by the defendant as a <u>Motion to Strike Plaintiffs' Jury Demand (Brief in Support of)</u>, but titled <u>Brief in Support of Motion to Strike Plaintiffs' Jury Demand</u>), Proceeding No. 94.

---

[1]Proceeding numbers refer to the pending adversary proceeding unless otherwise qualified.

A hearing was held on March 8, 2007. Appearing were Lee Loder for the plaintiffs; and Stephen Porterfield for the defendant Wells Fargo Home Mortgage.

## I. FACTUAL HISTORY

The plaintiffs executed a note with Southern Atlantic Financial Services, Inc. on May 15, 1998, for a loan of $51,300. In exchange, they gave Southern a security interest in certain real estate on which they had a home. Southern transferred its interest in the property and the note to the defendant's predecessor on June 3, 1998.

Prior to filing the pending case, the plaintiffs failed to make all required mortgage payments. When this case was filed on May 28, 2003, they were, according to an amended plan dated October 9, 2003, about $9,500 in arrears.

After filing this case, the plaintiffs again became delinquent in their payments. In response, the defendant filed a <u>Motion for Relief from Stay and Motion for Relief from Co-Debtor Stay</u> (Proceeding No. 10 in the main case) on August 28, 2003, seeking permission to foreclose its mortgage. That motion was resolved when the parties entered into an agreement regarding the plaintiffs' future mortgage payments. That agreement was incorporated into an order entered by this Court on November 19, 2003. The pertinent parts of that order are:

> 1.     The Debtors shall resume making the regular monthly mortgage payment unto the Creditor, presently in the amount of **$531.95**, beginning **OCTOBER 20, 2003**.
>
>         ..............
>
> 3.     The automatic stay of Section 362(a) is hereby MODIFIED to provide future relief unto the Creditor as follows: <u>should the Debtors default under the terms of this order, or the terms of the mortgage contract, by the failure to make a payment which is received by the Creditor within thirty (30) days from the date that it becomes due beginning on or before OCTOBER 20, 2003, then the automatic stay of Section 362 terminates as to the Creditor without further notice or order</u>. The waiver of any default occurring under this order shall not constitute a waiver as toward any subsequent default occurring under this order.

<u>Order on Motion for Relief from Automatic Stay</u>, November 19, 2003, Proceeding No. 21 in the main case (emphasis added).

Contending that the plaintiffs did not make all payments after entering into the above agreement, and therefore that the stay lifted, in June 2005 the defendant began foreclosure proceedings against the plaintiffs. That process ended with a foreclosure sale on August 30, 2004.

2

## II. CONTENTIONS and ISSUES

### A. The Plaintiffs' Contentions

The plaintiffs contend that they made all of the mortgage payments required by the above-quoted November 19, 2003, order. As such, they conclude the stay did not lift and therefore the foreclosure action taken was wrongful and in violation of the stay. In the alternative, the plaintiffs contend that even if they did not make all of their post-November 19, 2003, payments, the defendants failed to give required notice before instituting foreclosure. Specifically, the plaintiffs contend that the defendant did not satisfy Paragraph 21 of the parties' mortgage, which is the acceleration after default clause in that mortgage. The plaintiffs argue that if the defendants did not satisfy paragraph 21, an action which the plaintiffs contend is a condition precedent to foreclosure, the foreclosure is void. Based on that argument, the plaintiffs conclude that the foreclosure was wrongful and the defendant's actions in "taking" the property gave rise to numerous actions, which the plaintiffs list in their original and amended complaints. Those include: breach of contract; wrongful foreclosure; conversion; trespass; violation of the automatic stay; estoppel; fraud; unjust enrichment; and breach of fiduciary duty.

### B. The Defendant's Contentions

The defendant contends that the plaintiffs did not make all of their scheduled mortgage payments. Based on that contention, the defendant argues that when the plaintiffs did not make all payments, the stay lifted pursuant to the Court's November 19, 2003, order and therefore, the defendant was free to exercise its state law remedy of foreclosure. In the alternative, the defendant contends that it satisfied all notice requirements either directly or through constructive notice.

### III. PROCEDURAL HISTORY

The plaintiffs filed their original complaint on December 30, 2004. That complaint included causes of action for breach of contract, wrongful foreclosure, conversion, trespass, and violation of the automatic stay. Wells Fargo filed an Answer to the original complaint on March 4, 2005 (Proceeding No. 5).

The Court scheduled a trial for July 21, 2005. On July 6, 2005, Wells Fargo filed a Motion for Summary Judgment (Proceeding No. 18). The Court entered an order (Proceeding No. 19) scheduling oral arguments for August 9, 2005, and cancelling the trial set for July 21, 2005. Before the hearing, the plaintiffs filed a Response to Defendant Wells Fargo's Motion for Summary Judgment (Proceeding No. 23). Oral arguments were held on August 9, 2005. Appearing were Mr. Loder for the plaintiffs and Mr. Thomas Tutten for the defendant. The matter was submitted on the arguments of counsel and the pleadings.

3

On September 30, 2005, nine months after the plaintiffs filed their original complaint, and seven months after the defendant filed an answer, the plaintiffs filed a Demand for Jury Trial (Proceeding No. 26).

On October 4, 2005, the defendant filed a Motion to Strike Plaintiffs' Demand for Trial by Jury (Proceeding No. 27). On November 18, 2005, the Court entered an order denying the plaintiffs' demand for a jury, finding that the plaintiffs' demand was not timely (Proceeding No. 30). As explained in its comments on the record, the Court denied the jury demand based on Rule 38 of the Federal Rules of Civil Procedure, (applicable to this adversary proceeding through Rule 9015 of the Federal Rules of Bankruptcy Procedure). That rule provides that a demand for a jury trial must be made either at the commencement of the case or within 10 days after service of the answer to the complaint. The complaint was filed on December 30, 2004, and the defendant filed an answer on March 4, 2005. The plaintiffs first made a demand for a jury trial on September 30, 2005.

On January 3, 2006, the Court entered an Order (Proceeding No. 32) granting the defendant's Motion for Summary Judgment (Proceeding No. 18).

On January 13, 2006, the plaintiffs filed a Motion to Reconsider (Proceeding No. 34) **and** a Notice of Appeal (Proceeding No. 35).[2] The Court scheduled a hearing for February 8, 2006.

On January 25, 2006, the defendant filed a Response to Motion to Reconsider (Proceeding No. 42). On February 7, 2006, the plaintiffs filed a Supplement to Motion to Reconsider (Proceeding No. 44).

The February 8 hearing was held. Appearing were Mr. Loder for the plaintiffs and Mr. Stephen Porterfield for the defendant.

On May 23, 2006, the Court entered an Order (Proceeding No. 50) reversing its January 3, 2006, Order. That order read in part:

> After notice, a hearing was held on February 8, 2006. Appearing at the hearing were Lee Loder for the plaintiffs; and Stephen Porterfield for the defendant. The parties were given a deadline of February 15, 2006, to file briefs and February 22, 2006, to file reply briefs. The matter was submitted on the arguments of counsel and the pleadings.

> The defendant filed a letter brief on February 15, 2006. The plaintiffs did not file a brief.

---

[2] The plaintiffs withdrew the Notice of Appeal (Proceeding No. 35) on October 28, 2006.

4

The Court has reviewed its previous order. And, the Court has conducted a second review of the record in this proceeding. After those reviews, the Court finds that there may be a genuine issue of material fact. As such the Court finds that it should reverse its January 3, 2006, order granting summary judgment and allow this matter to proceed to a trial on the merits.

The Court recognizes that such a ruling is unusual. But the Court also recognizes that even where no new evidence is presented, a court is free to reconsider its findings and to reach another conclusion. See, <u>Wm. G. Roe & Co. v. Armour & Co.</u>, 414 F.2d 862 (11th Cir 1969). (After remand from the circuit court, while the district court was not directed to reconsider its findings, the district court could reconsider its findings and find that it was wrong and reverse itself.)

In this proceeding, while this Court is not finding that its factual conclusions about certain evidence are wrong, it is finding that it may have been wrong in finding that there was not a genuine issue of material fact and that there may be some factual issues that were not addressed initially by the Court, issues that should be addressed through a trial on the merits.

<u>Order and Notice of Status Conference</u>, entered May 23, 2006, Proceeding No. 50.

A status conference was held on June 14, 2006, and a hearing was held on July 26, 2006. The matter was set for trial for December 7, 2006.

On August 23, 2006, the plaintiffs filed their <u>First Amended Adversarial Complaint for Wrongful Foreclosure, Breach of Contract, Conversion, Trespass & Violation of Automatic Stay, Estoppel, Fraud, Unjust Enrichment & Breach of Fiduciary Duty</u> (Proceeding No. 59). The plaintiffs **included a jury demand** with this amended complaint. Substantively, the complaint included the five counts from the original complaint and added four new counts. As listed in the amended complaint, those were:

(1)     Count One - Breach of Contract;
(2)     Count Two - Wrongful Foreclosure;
(3)     Count Three - Conversion;
(4)     Count Four - Trespass;
(5)     Count Five - Violation of Automatic Stay;
(6)     Count Six - Estoppel;
(7)     Count Seven - Fraud;
(8)     Count Eight - Unjust Enrichment;
(9)     Count Nine - Breach of Fiduciary Duty

On August 30, 2006, the defendant filed a <u>Motion to Dismiss First Amended Adversarial Complaint</u> (Proceeding No. 60). The Court scheduled a hearing for September 27, 2006. The September 27 hearing was held. Appearing were Mr. Loder for the plaintiffs and Ms. Robin Beardsley and Mr. Porterfield for the defendant.

On October 5, 2006, the Court entered an Order (Proceeding No. 64) that denied the Motion to Dismiss First Amended Adversarial Complaint (Proceeding No. 60) and scheduled the December 7 trial.

On October 9, 2006, the plaintiffs filed The Plaintiffs' Motion for Summary Judgment Against Defendant's Wells Fargo and GE Mortgage on Counts One (Breach of Contract), Two (Wrongful Foreclosure), Three (Conversion) & Four (Trespass) (Proceeding No. 66).

On October 17, 2006, the plaintiffs filed an Application for Entry of Default; Motion for Default Judgment (Proceeding No. 70). The Court scheduled a hearing for November 8, 2006. On October 18, 2006, the defendant filed an Answer to Complaint (Proceeding No. 72).

On October 25, 2006, the defendant filed a Response to Plaintiffs' Motion for Summary Judgment (Proceeding No. 77). On October 28, 2006, the Plaintiffs filed a Plaintiffs' Response to Defendant's Response to Plaintiffs' Motion for Summary Judgment (Proceeding No. 79).

The November 8 hearing was held. Appearing were the plaintiffs, Mr. Loder, Mr. Porterfield, Ms. Beardsley, and Mr. Mark Cline, a representative of the defendant. The matter was submitted on the arguments of counsel and the pleadings. The trial scheduled for December 7, 2006, was cancelled.

On February 8, 2007, the Court entered a Memorandum Opinion and Order (Proceeding No. 89) denying The Plaintiff's Motion for Summary Judgment Against Defendant's Wells Fargo and GE Mortgage on Counts One (Breach of Contract), Two (Wrongful Foreclosure), Three (Conversion) & Four (Trespass) (Proceeding No. 66). The Court scheduled a status conference for March 7, 2007.

On February 9, 2007, the plaintiffs filed the pending Motion for Findings of Fact and Conclusion of Law (Proceeding No. 90). The Court scheduled a hearing for March 7, 2007, but continued the hearing to March 8, 2007.

On March 1, 2007, the defendant filed the pending Brief in Support of Motion to Strike Plaintiffs' Jury Demand (Proceeding No. 94). On March 6, 2007, the plaintiffs filed a Plaintiffs' Response to Defendant Wells Fargo's Motion to Strike Jury Demand (Proceeding No. 95) and the pending Motion to Certify Summary Judgment Decision as Final Order (Proceeding No. 96).

The March 8 hearing was held. Appearing were Mr. Loder and Mr. Porterfield.

## IV. THE THREE PENDING MATTERS

The specific matters addressed by this Memorandum Opinion and related Order are:

6

A.    The plaintiffs' <u>Motion for Findings of Fact and Conclusions of Law</u> (Proceeding No. 90);[3]

B.    The plaintiffs' <u>Motion to Certify Summary Judgment Decision as Final Order</u> (Proceeding No. 96);[4] and,

C.    The defendant's <u>Motion to Strike Jury Demand</u> (Proceeding No. 94).[5]

## A.  The Plaintiffs' <u>Motion for Findings of Fact and Conclusions of Law</u>

The first matter pending before the Court is the plaintiffs' <u>Motion for Findings of Fact and Conclusions of Law</u> (Proceeding No. 90) where the plaintiffs seek a clarification of the Court's denial of <u>The Plaintiff's Motion for Summary Judgment Against Defendant's Wells Fargo and GE Mortgage on Counts One (Breach of Contract), Two (Wrongful Foreclosure), Three (Conversion) & Four (Trespass)</u> (Proceeding No. 66).  The pertinent parts of their summary judgment motion, without attachments, read:

---

[3] The advent of electronic filing has created some new procedural questions for courts. The document bears the title <u>Motion for Findings of Fact and Conclusion of Law</u>, but the plaintiffs docketed it as a <u>Motion to Reconsider</u>. See Proceeding No. 90.  See also notes 4 and 5 below.

[4] This motion was docketed by the plaintiffs as a <u>Motion for Leave to Appeal</u> (Proceeding No. 96); however, the motion was clearly a <u>Motion to Certify Summary Judgment Decision as Final Order</u> pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, the rule on which a motion to certify an order as final must be based.  That is very important.  As the Court discusses in the latter parts of this opinion, if the plaintiffs wanted to appeal the denial of their motion for summary judgment, their remedy was to file a real motion for leave to appeal, not just to docket one as a motion for leave to appeal.  The filed motion, that is the motion to certify the order denying the motion for summary judgment as a final order, is not the proper vehicle.  The reason is, a motion for summary is an interlocutory order.  A court may not convert an interlocutory order into a final order by way of Rule 54.  But, as explained later, this issue is academic.  Even if this Court were inclined to treat the filed motion as a motion for leave to appeal, because the motion was filed on March 6, 2007, more than ten days after the Court's order denying the motion for summary judgment, it was not timely.  Therefore, even if it were a motion for leave to appeal, it would be due to be denied.  See Rules 8001, 8002, and 8003, of the Federal Rules of Bankruptcy Procedure.

[5] As stated above, the document bears the title <u>Brief in Support of Motion to Strike Plaintiffs' Jury Demand</u> and was docketed as such; however, on its face it is a <u>Motion to Strike Jury Demand</u> and the Court is considering it as such.  See Proceeding No. 94.

Comes now the plaintiffs, Linda and Roderick Sharpe and move this court to grant summary judgment in favor of the plaintiffs and against the defendants in Count's 1, 2, 3 and 4.  As grounds the plaintiffs say as follows:

. . .

## Facts

1.      On or about the 15th day of May, 1998, Southern Atlantic Financial Services executed a mortgage to the Plaintiffs, a copy of which mortgage is attached and incorporated herein as Exhibit A.  The defendants later acquired said mortgage.

2.      **It is undisputed that no notice of default was given in accord and as required by paragraph 21 of the plaintiffs' mortgage.**

3.      The attached Wells Fargo chart indicates that the stay was lifted, i.e. MFR granted, on June 11, 2004.  The attached Exhibit C, accelerating the balance and commencing foreclosure was sent in the absence of the Paragraph 21 notice which is a "condition precedent" to acceleration and to foreclosure.

4.      The defendants foreclosed, demanded and received possession, entered the plaintiffs' property without lawful right and removed the plaintiffs' possessions from the property.  Therefore, the defendants [sic] were damaged.

## Argument

**It is undisputed that the defendants failed to give the plaintiffs' notice as required by Paragraph 21 of the mortgage.**  In In re Colony Square Company, debtor, v. Prudential Insurance Company of America, 843 So.2d 479 (11th Cir. 1988), this Court stated, "when a default clause contains a notice provision, it must be strictly followed" and "summary judgment is warranted if notice is not given."  The Alabama Civil Court of Appeals provides the same interpretation of default/cure clauses when it states that "[n]otice provisions in a lease requiring a landlord to give written notice and provide an opportunity for a tenant to cure any default are **conditions precedent** which must be averred and proved prior to re-entry of the premises and forfeiture of the lease."  Arlen realty, Inc. v. L.L. Dozier, et. al, 393 So.2d 489, 491 (Ct. Civ. App. 1980)

In this case, the Paragraph 21 notice is a clear and undisputed "condition precedent" to exercising the power of sale contained in the mortgages.  Consequently, the exercise of the power of sale against the Plaintiffs was unlawful.

Therefore, the acceleration of the plaintiffs' balance and foreclosure notice (see Exhibit B), the defendants subsequent foreclosure, demand for and acceptance of possession (see Exhibit C), entry onto the plaintiffs' property and removal of the plaintiffs' possessions from the property amounted to wrongful

Case 04-00250-BGC    Doc 112    Filed 06/27/07    Entered 06/27/07 10:44:43    Desc Main
Document    Page 8 of 41

exertion of control over the plaintiffs' property which was inconsistent with and destructive of the plaintiffs' title to and right of possession to said real and personal property, or conversion; an invasion of the plaintiffs property right against the plaintiffs' will, or trespass; and a breach of its promise to provide said notice, or wrongful foreclosure and breach of contract.

In conclusion, there is no genuine dispute of material fact regarding the above and summary judgment is due to be granted.

WHEREFORE, the Plaintiffs pray that this Court will grant this motion and set the issue of damages for hearing and/or trial.

The Plaintiffs' Motion for Summary Judgment Against Defendant's Wells Fargo and GE Mortgage on Counts One (Breach of Contract), Two (Wrongful Foreclosure), Three (Conversion ) & Four (Trespass), filed October 9, 2006, Proceeding No. 66.

The pertinent parts of this pending Motion for Findings of Fact and Conclusions of Law, read:

Comes now the plaintiffs, by counsel, and move this Court to make general and specific findings of fact and to make conclusions of law for its February 8, 2007 Order and "Memorandum Opinion".  As grounds:

1.      The plaintiffs would like to establish whether this Court has evidence and/or conclusions of law to dispute the fact that the defendants failed to give the notice in Paragraph 21 of the mortgage attached to said summary judgment motion and incorporated herein prior to accelerating the plaintiffs' mortgage.

2.      The plaintiffs seeks this Court's guidance on whether, under Alabama law, the Paragraph 21 notice is a condition precedent to acceleration.

3.      Finally, the plaintiffs request that this Court make findings of fact and conclusions of law that are typically made in federal summary judgment decisions.

Motion for Findings of Fact and Conclusions of Law, February 9, 2007, Proceeding No. 90.

This portion of the Court's opinion is an attempt to respond to the debtor's request for findings of fact and conclusions of law.[6]  This attempt has two general

---

[6] It should be noted that by definition, the plaintiffs' motion for summary judgment applied only to "Counts One (Breach of Contract), Two (Wrongful Foreclosure), Three (Conversion) & Four (Trespass)," (four of the counts from the plaintiffs' original complaint), although the plaintiffs filed their amended complaint, (including the new counts), on August 8,

components. Those are: (1) Findings of Fact; and (2) Conclusions of Law.

Within "Findings of Fact," there are two questions. Those are: (a) did the plaintiffs make all mortgage payments after the Court's November 19, 2003, order; and (b) did the defendant satisfy all statutory and contractual notice requirements.

Within "Conclusions of Law," there are two questions. Those are: (a) was the defendant required to satisfy the provisions of paragraph 21 in the mortgage before accelerating the mortgage; and (b) does the opinion in <u>Redman v. Federal Home Mortgage Corp.</u>, 765 So.2d 630 (Ala.1999), <u>rehearing denied</u>, apply.[7]

## 1. Findings of Fact

This Court denied the plaintiffs' motion for summary judgment because it found there were genuine issues of material fact in two unrelated areas. Those were: (a) the plaintiffs mortgage payments after the Court's November 19, 2003, order; and (b) the defendant's statutory and contractual notice before foreclosure. These areas are discussed under the two parts that follow.

### a. Did the Plaintiffs Make All Mortgage Payments after the Court's November 19, 2003, Order?

As discussed above, the Court entered an order, based on the parties' agreement, that if the plaintiffs did not make all mortgage payments beginning with their October 2003 payment, relief from the stay would be granted by operation of law without further notice or hearing. The plaintiffs contend they did make the required payments, and the stay did not lift. The defendant contends that the plaintiffs did not make all of their payments and the stay lifted. The immediate question is whether there are genuine issues of material fact that must be decided at a trial on the merits. As discussed below, the Court finds that there are.

The Court's January 3, 2006, order granting the defendant's <u>Motion for Summary Judgment</u> (Proceeding No. 18) included a chart which the Court considered at the time to contain all the evidence needed to find that the plaintiffs did not make all of their post-November 19, 2003 payments; hence, the Court found that the stay lifted and the defendant was free to foreclose on the property. That chart read:

---

2006, two months <u>before</u> the motion for summary judgment was filed on October 9, 2006.

[7] "The property rights of a debtor in a bankruptcy estate are defined by state law." <u>In re Smith</u>, 85 F.3d 1555, 1558 (11th Cir. 1996). The opinion in <u>Redman</u> discusses what notice must be given a property owner in Alabama before a lender may foreclose.

10

| Date Payment Made (According to the Debtors' Exhibit A) | Amount of Payment | Nature of Payment (According to the Attachments to Debtors' Exhibit A) | This Court's Designation of Mortgage Month Satisfied by the Specific Payment |
|---|---|---|---|
| 9-23-03 | $480.00 | Check #1904 (This check includes the notation "Sept" next to the "For" line.) | September 2003 |
| 11-03 | $480.00 | Check #1939 (This check is not dated.) | October 2003 |
| 12-24-03 | $480.00 | Check #804 | November 2003 |
| 1-04 | $480.00 | Check #1969 (This check is dated 1-04 only.) | December 2003 |
| 3-04 | $480.00 | Western Union Payment (This item is dated both "3/2004" and "8/30/04") | January 2004 |
| 4-26-04 | $485.00 | Check #2006 (A copy of this check is not attached) | February 2004 |
| 5-26-04 | $485.00 | Check #2014 | March 2004 |
| 6-27-04 | $485.00 | Check #2024 | This Check was Returned |

Order, entered January 3, 2006, Proceeding No. 32.

The Court compiled the above chart based on **evidence supplied by the plaintiffs in their Exhibit A** attached to their Response to Defendant Wells Fargo's Motion For Summary Judgment filed on August 8, 2005, (Proceeding No. 23). Based on that evidence, the Court found:

> [I]t is clear that the plaintiffs did not make all payments required and did not make those payments timely under their note and mortgage or under the Court's November 19, 2003, order. At best for the plaintiffs, when the defendant began foreclosure proceedings in June 2005, the plaintiffs were at least two months in arrears on their mortgage payments. Therefore, by the time the defendant began its foreclosure proceedings in June 2005, the stay had lifted by operation of the November 19 order.

Id. at 5.

11

While additional evidence was offered at the same time, **because the plaintiffs themselves supplied the facts contained in the Court's chart**, the Court felt that it had no choice but to grant the defendant's motion for summary judgment. Consequently, the Court found that there were no genuine issues of material fact and the defendant's motion for summary judgment should be granted. But after further review of both the summary judgment standard in this Circuit and the facts, the Court reversed itself and found that there were genuine issues of material fact.[8]

For purposes of the pending motions, this Court concludes again that genuine issues of material facts remain. This conclusion is, as discussed below, supported by the parties' own submissions, many of which are identical, but offered for opposite conclusions.

For instance, both Parties submitted the identical chart listing what mortgage payments were made by the plaintiffs after the Court's November 19, 2003, order. That chart is the chart from which the Court constructed its January 3, 2006, chart discussed above.

The defendant attached the parties' chart as Exhibit G to its <u>Motion for Summary Judgment</u> (Proceeding No. 21). Of that exhibit, the defendant wrote:

> Page 1 lists payments that Plaintiffs allege have been made to Defendant before and after the Order on Motion for Relief and reflects that Plaintiffs did not make timely payments in 11/03, 2/04, or 3/04. Further, the Plaintiffs did not make payments at the correct payment amount of $53195.

---

[8] Under Rule 56(c) of the Federal Rules of Civil Procedure, applicable to this proceeding by Bankruptcy Rule 7056, a moving party is entitled to summary judgment, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." <u>See</u> Fed. R. Bankr. P. 7056.

The record, including all evidence and factual inferences, must be construed in the light most favorable to the nonmoving party. <u>See</u> <u>Lofton v. Secretary of Dept. of Children and Family Services</u>, 358 F.3d 804, 809 (11th Cir. 2004); <u>Johnson v. Governor of State of Fla.</u>, 353 F.3d 1287, 1292 (11th Cir. 2003) (on summary judgment, "the district court must view all evidence in the light most favorable to the non-moving party and resolve all reasonable doubts about the facts in its favor.").

The framework for determining whether there exists a genuine issue as to a given material fact, therefore precluding summary judgment, is outlined in the Eleventh Circuit Court of Appeals decision in <u>Fitzpatrick v. City of Atlanta</u>, 2 F.3d 1112 (11th Cir. 1993). The Court has followed that framework in determining whether there are any genuine issues of material fact in this proceeding.

Id.

The plaintiffs attached the identical chart as Exhibit A to its <u>Response to Defendant Wells Fargo's Motion for Summary Judgment</u> (Proceeding No. 23). Of that exhibit, the plaintiffs wrote, "The plaintiffs made all regular monthly payments directly and by virtue of credits from post petition payments (Exhibit A). On or about July 6, 2004, the defendant began foreclosure proceedings although the plaintiffs were current on their mortgage obligation at the time." <u>Id</u>.

Similarly, both parties attach identical copies of numerous checks and other payments devices. Defendant's <u>Motion for Summary Judgment</u> (Proceeding No. 21) at Exhibit G and plaintiffs' <u>Response to Defendant Wells Fargo's Notion for Summary Judgment</u> (Proceeding No. 23) at Exhibit A. The defendant contends that those documents demonstrate that the plaintiffs did not make their mortgage payments. The plaintiffs contend that those documents demonstrate that they made their mortgage payments.

And maybe most importantly, at least from the standpoint of whether there are conflicting facts, both parties attach an identical affidavit of Ms. Barbara Beauchamp, an employee of Wells Fargo Mortgage. See defendant's <u>Motion for Summary Judgment</u>, Exhibit C (Proceeding No. 21), and plaintiff's <u>First Amended Adversarial Complaint for Wrongful Foreclosure, Breach of Contract, Conversion, Trespass & Violation of Automatic Stay, Estoppel, Fraud, Unjust Enrichment & Breach of Fiduciary Duty</u>, Exhibit C (Proceeding No. 59) . The Affidavit reads in part:

AFFIDAVIT

BEFORE ME, the undersigned, Notary Public, personally appeared <u>Barbara Beauchamp</u>, who is known to me and after being by me first duly sworn, deposes and says the following:

I am an employee of Wells Fargo Home Mortgage. My individual responsibility is to administer mortgage loans in bankruptcy. Specifically, this includes monitoring loan payments. I hereby certify and state that said records were made in the regular course of business, and that it was in the regular course of said office for such records to be made at the time of the events, transactions, or occurrences to which they refer or within a reasonable time thereafter. My personal knowledge of this mortgage loan shows the following:

| | | |
|---|---|---|
| 1. | Loan No: | 0022060412 |
| 2. | Debtor: | Roderick Sharpe |
| 3. | Bankruptcy Case No. | 03-04644-BGC-13 |
| 4. | Property Description: | 2617 Avenue H |
| | | Birmingham, AL 35218 |

13

On or about May 15, 1998, the Plaintiffs entered into note and mortgage for $51,3000, attached hereto as Exhibit A.

On or about November 19, 2003 an Order on motion for relief was entered by this Court. Attached is a copy of the Order. The Order requires the Debtors to make post-petition payments to Wells Fargo home Mortgage beginning with the October, 2003 post-petition payment. No full monthly payment was received and applied in October, 2003. Attached hereto as Exhibit B is the post-petition pay history on this account showing only a partial payment of $480.00 received in October, 2003.

Additionally, no payment was received by Wells Fargo during November, 2003. Pursuant to the Order, Wells Fargo's position is that relief was granted at that time. Only a partial payment was received during January, 2004. No payments were received during February, 2004 or March, 2004. One partial payment was received during April, 2004. No payment was received during May, 2004. Only a partial payment was received during June, 2004. See attached Exhibit B.

As a result, Wells Fargo began foreclosure proceedings. I have reviewed the Plaintiff's Complaint. The allegations contained in Plaintiffs' complaint regarding the application and receipt of payments are untrue.

The facts stated herein are true. In verification of the same, I subscribed my signature hereto.

Exhibit C to <u>Motion for Summary Judgment</u>, July 12, 2005, Proceeding No. 21.

<u>Id</u>.

In terms of the Court's denial of the plaintiffs' summary judgment, this affidavit includes a tremendous amount of information <u>in favor of the defendant</u>, information which, on its face, may be enough not only to deny the plaintiffs' motion but also to grant judgment in favor of the defendant. But giving the plaintiffs the benefit of the doubt, at the very least, that information demonstrates clearly the factual conflicts which the Court cannot resolve without a trial on the merits.[9]

---

[9] In contrast to the above, the plaintiffs submitted Mrs. Sharpe's affidavit. That affidavit reads in part:

4. This Court entered an order on or about, November 19, 2003, the Court ordered the plaintiffs to make "regular monthly mortgage payments" unto the Creditor beginning on October 20, 2003.

5. **I made all regular monthly payments** directly and by virtue of credits from post petition payments.

14

Without the assistance of further evidence, the standards in this Circuit require the Court to find that the documents discussed above demonstrate that there are genuine issues of material facts about whether the plaintiffs made all of their payments after the Court's November 19, 2003, order.[10]

## b. Did the Defendant Satisfy All
## Statutory and Contractual Notice Requirements?

The next question to address is: Are there genuine issues of material fact regarding the notice the defendant gave, or did not give, the plaintiffs?

### (1) Two Types of Notice Provisions

There are two types of notice provisions involved here. They are: (1) statutory, represented by Section 35-10-13, Code of Alabama 1975; and (2) contractual, represented by paragraphs 14 and 21 of the parties' mortgage contract.

### (a) Statutory - Section 35-10-13

Section 35-10-13 of the Code of Alabama provides the minimum notice publication standards for foreclosure by power of sale for mortgages executed after December 31, 1988. That section reads:

Notice of said sale shall be given in the county where said land is located.

Notice of all sales under this article shall be given by publication once a week for three successive weeks in a newspaper published in the county or counties in which such land is located. If there is land under the mortgage in more than one county the publication is to be made in all counties where the land is located. The notice of sale must give the time, place and terms of said sale, together with a description of the property.

If no newspaper is published in the county where the lands are located, the notice shall be placed in a newspaper published in an adjoining

---

6. On or about July 6, 2004 the defendant began foreclosure proceedings although the [sic] I was current on my mortgage obligation at this time (See attached Exhibit A).

Affidavit of Linda Sharpe, filed August 9, 2005, Proceeding No. 24 (emphasis added). As compared to the defendant's evidence, it also demonstrates the clear issues of fact.

[10] In discussing these documents, the Court does not limit itself to finding that there are no other genuine issues of material fact.

15

county. The notice shall be published in said adjoining county for three successive weeks.

Code of Ala. 1975, § 35-10-13.

As far as the Court can determine, the plaintiffs do not contend that the defendant did not satisfy the requirements of section 35-10-13. The "Mortgage Foreclosure Sale" notice attached to the defendant's <u>Response to Plaintiffs' Motion for Summary Judgment</u> (Proceeding No. 85), list publication dates in the "Alabama Messenger" for July 24, 2004, July 27, 2004, and August 7, 2004. On its face, the publication notice appears to satisfy the requirements of section 35-10-13.

Consequently, based on this evidence, the Court finds that there are no factual issues as to whether the notice required to be published in accordance with section 35-10-13 was published.[11] If there are any, the parties have not made the Court aware of them. And if there are any, again, those would be issues that should be addressed at trial.

### (b)  Contractual

The parties' mortgage contract includes two pertinent notice provisions. One is paragraph 14, entitled "Notices." That paragraph describes how notice should be given, such as by first class mail. Another is paragraph 21, entitled "Acceleration; Remedies." That paragraph describes the substantive provisions of a notice of acceleration if there has been a default.

### (i)  Paragraph 14

Paragraph 14 of the parties' mortgage reads:

14. Notices. Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail, unless applicable law requires use of another method. The notice shall be

---

[11] This point is crucial in addressing an issue discussed below, that is, whether the decision of the Alabama Supreme Court in <u>Redman v. Federal Home Mortgage Corp.</u>, 765 So.2d 630 (Ala.1999), <u>rehearing denied</u>, applies to the matters before this Court. Whether it does or not will have a big impact on this proceeding. The reason is that <u>Redman</u> discusses whether notice requirements of default proceedings, particularly acceleration of a mortgage, may be satisfied through "constructive notice." As discussed below, the plaintiffs argue <u>Redman</u> either does not apply or that any "constructive notice" discussion in <u>Redman</u> was dictum and should not be applied here. Principally, the plaintiffs support those arguments with the contention that the <u>Redman</u> Court decided its case partly on whether section 35-10-13 was satisfied and therefore that Court did not need to consider constructive notice.

16

directed to the Property Address or any other address Borrower
designates by notice to Lender.... Any notice provided for in this Security
Instrument shall be deemed to have been given to Borrower or Lender
when given as provided in this paragraph.

<u>Mortgage</u>, dated May 15, 1998 (attached to numerous pleadings).

It does not appear that the plaintiffs contend that the defendant did not satisfy
the notice requirements of paragraph 14. The address listed by the debtor in his
bankruptcy petition is 2617 Avenue H, Birmingham, Alabama 35218. The address
listed in the parties' mortgage is the same. The address listed in the notices sent to the
plaintiffs by the defendant is the same. And finally, the address of the property subject
to the pending motions is the same.[12]

If there <u>are</u> factual issues of whether the notices were sent by first class mail or
by delivering it, the parties have not made the Court aware of them. Therefore, based
on this evidence, the Court concludes that there are no factual issues as to whether the
notices sent to the plaintiffs <u>satisfy the notice requirements of paragraph 14</u>. All of the
notices, whether sufficient or not, were sent to the address required by paragraph 14.

## (ii) Paragraph 21

The other contractual notice provisions are in paragraph 21. The issue that
surrounds these provisions is partly factual and partly legal and has two components.
They are: (1) did the defendant send the actual notices required by paragraph 21; and
(2) if it did not, did the plaintiffs have constructive notice of the mortgage acceleration.

Paragraph 21 of the parties' mortgage reads:

21. Acceleration; Remedies. Lender shall give notice to Borrower prior to
acceleration following Borrower's breach of any covenant or agreement in
this Security Instrument.... The notice shall specify: (a) the default; (b) the
action required to cure the default; (c) a date, not less than 30 days from
the date the notice is given to Borrower, by which the default must be
cured; and (d) the failure to cure the default on or before the date
specified in the notice may result in acceleration of the sums secured by
the Security Instrument and sale of the property. The notice shall further
inform Borrower of the right to reinstate after acceleration and sale. If the
default is not cured, on or before the date specified in the notice, Lender,
at its option, may require immediate payment in full of all sums secured by
the Security Instrument without further demand and may invoke the power

_____

[12] Of course, the Court recognizes that the plaintiffs contest the sufficiency of the
notices.

17

of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, reasonable attorney's fees and cost of title evidence.

If Lender invokes the power of sale, Lender shall give a copy of notice to Borrower in the manner provided in paragraph 14. Lender shall publish the notice of sale once a week for three consecutive weeks in a newspaper published in Shelby County, Alabama, and thereupon shall sell the Property to the highest bidder at public auction at the front door of the County Courthouse of this County. Lender shall deliver to the purchaser Lender's deed conveying the Property. Lender or its designee may purchase the Property at any sale.  Borrower covenants and agrees that the proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

Mortgage, dated May 15, 1998 (attached to numerous pleadings).

### (2) Remaining Issues of Material Fact
### Regarding the Notice Provisions

As stated above, the Court finds that there do not appear to be any issues of fact as to whether notice was given in accordance with section 35-10-13 of the Alabama Code or paragraph 14 of the parties' mortgage.[13]  The only question remaining then is whether there are issues of fact regarding the paragraph 21 notice provision.

### (a) Actual Notice

Like the situation with the question of whether the defendants made all of their post-November 19, 2003, order payments, both parties submitted identical documents but they are arguing completely opposite positions.

Both submitted:

1.    The defendant's attorney's July 6, 2004, letter to Mr. and Mrs. Sharpe, addressed to 2617 Avenue H, Birmingham, Alabama 35218, referencing "Notice of Acceleration of Promissory Note and Mortgage - 2617 Avenue H, Birmingham, Alabama 35218," (plaintiff's Motion for Summary Judgment, (Proceeding No. 66) Exhibit B and defendant's Response to

---

[13]If they disagree, either party may, of course, present any evidence on these issues at trial.

<u>Plaintiffs' Motion for Summary Judgment</u>, (Proceeding No. 85) Exhibit 1);[14]

2.    The defendant's attorney's July 19, 2004, letter to Mr. and Mrs. Sharpe, addressed to 2617 Avenue H, Birmingham, Alabama 35218, referencing "Foreclosure on Property Located at 2617 Avenue H, Birmingham, Alabama 35218," (plaintiff's <u>Motion for Summary Judgment</u>, (Proceeding No. 66) Exhibit B and defendant's <u>Response to Plaintiffs' Motion for Summary Judgment</u>, (Proceeding No. 85) Exhibit 2);[15] and

3.    The defendant's notice of <u>Mortgage Foreclosure Sale</u> showing dates of publication of July 24, 2004; July 31, 2004; and August 7, 2004, with a sale date of August 16, 2004, (plaintiff's <u>Motion for Summary Judgment</u>, (Proceeding No. 66) Exhibit B and defendant's <u>Response to Plaintiffs' Motion for Summary Judgment</u>, (Proceeding No. 85) Exhibit 2.)[16]

If these documents are open to two completely different interpretations, this Court must find, as to the issue of whether the defendant gave the plaintiffs the <u>actual</u> notice required by paragraph 21 of the parties' contracts, that there are genuine issues of material fact. Consequently, on this issue, the Court must find that the motion for summary judgment had to be denied.

### (b) Constructive Notice

The defendant argues that even if it did not give the proper actual notice, based on the ruling by the Alabama Supreme Court in <u>Redman v. Federal Home Mortgage Corp.</u>, 765 So.2d 630 (Ala.1999), <u>rehearing denied</u>, the plaintiffs received constructive notice of the mortgage acceleration and foreclosure.

The plaintiffs contend that <u>Redman</u> does not apply because it is either distinguishable from the instant situation or that the constructive notice portion of the decision is dictum.

---

[14]The plaintiff's <u>Motion for Summary Judgment</u> was entered on the Court's electronic docket by the plaintiffs as Proceeding No. 66. The motion made reference to three exhibits, those being Exhibit A, Exhibit B, and Exhibit C. None of the exhibits were filed with, or attached to, the motion. However, the plaintiffs filed a separate electronic document which they docketed as Exhibit A. They did not file an electronic copy of Exhibit B or Exhibit C, but they did attach printed copies of those exhibits, and Exhibit A, to the printed copy of the motion provided to the Court. It is from that printed material that the Court considered Exhibit B and Exhibit C.

[15]See footnote 14.

[16]See footnote 14.

19

The Court cannot resolve the issue of whether there are genuine issues of material fact regarding constructive notice until it answers the legal question of whether Redman applies. Once that issue is answered however, the Court can determine whether there are genuine issues of material fact regarding constructive notice. The Redman issue is discussed below in the context of conclusions of law.

## 2. Conclusions of Law

In considering the plaintiffs' request for conclusions of law, the Court has considered two questions. They are: (a) was the defendant required to satisfy the provisions of paragraph 21 in the mortgage before accelerating the mortgage; and, (b) does the opinion in Redman v. Federal Home Mortgage Corp., 765 So.2d 630 (Ala.1999), rehearing denied, apply.

### a. Was the Defendant Required to Satisfy the Provisions of Paragraph 21 in the Mortgage before Accelerating the Mortgage?

Based on the discussion above, the Court concludes that not only was the defendant required to satisfy the provisions of paragraph 21 of the parties' mortgage contract, but it was also required to satisfy the other contractual, as well as all statutory, notice provisions provided by the contract and state law. So, as a conclusion of law, the Court finds that the defendant was required to satisfy the provisions of paragraph 21 in the mortgage before accelerating the mortgage.

### b. Does the opinion in Redman v. Federal Home Mortgage Corp. apply?

The second question under this heading is: Does the opinion in Redman v. Federal Home Mortgage Corp. apply?[17]

If Redman applies, the defendant may prove that it satisfied the paragraph 21 notice provisions through constructive notice. If Redman does not apply, the defendant gets only one opportunity to prove that it satisfied the paragraph 21 provisions, that is, it satisfied the provisions with actual notice. Clearly, the plaintiffs do not want Redman to apply. They argue that actual notice was not given, and because it was not, the defendant did not satisfy the required paragraph 21 provisions. Based on those arguments, the plaintiffs conclude that the mortgage foreclosure was void. The plaintiffs base their argument that Redman does not apply on two contentions. One, they contend that Redman is distinguishable from the instant proceeding. Two, they

---

[17] Again, the Court notes, "The property rights of a debtor in a bankruptcy estate are defined by state law." In re Smith, 85 F.3d 1555, 1558 (11th Cir. 1996).

contend that any discussion by the <u>Redman</u> Court of constructive notice is dictum. This Court disagrees with both contentions.

In summary, the facts of <u>Redman</u> are these. The Redmans purchased a home in 1995 and gave SouthTrust Corporation a mortgage to secure a loan to buy the house. Mrs. Redman sued for divorce later that year. Mr. Redman moved from their home and another individual moved in with Mrs. Redman. Mrs. Redman assumed the responsibility of the monthly mortgage payments, but when there was a default, SouthTrust contacted Mr. Redman. In 1996, SouthTrust wrote both Mr. and Mrs. Redman at the home address to advise them that if payments were not made, it would exercise its right of foreclosure. Mr. Redman asked SouthTrust to delay foreclosure pending the divorce action. After some delay, SouthTrust sent notices of default to the Redmans at the home address. In 1997, SouthTrust mailed a notice of foreclosure to the Redmans at the same address. That notice was published in accordance with state law. SouthTrust purchased the property at foreclosure and transferred the property to now co-defendant, Federal Home Loan Mortgage Corporation. Federal filed a complaint for ejectment. Mrs. Redman filed a counterclaim alleging <u>wrongful foreclosure, fraud, and breach of contract</u>. The trial court entered summary judgment for the defendants.

In deciding the case, the Alabama Supreme Court discussed the notice provisions of section 35-10-13 and paragraphs 14 and 21 of those parties' mortgage.[18] In doing so, the Court specifically ruled on the question of whether the lender satisfied the procedural notice provisions of section 35-10-13 and paragraph 14 and whether the borrowers received constructive notice of the substantive provisions of paragraph 21.

### (1) Is <u>Redman</u> Distinguishable for the Instant Proceeding

The plaintiffs' first basis for their argument that <u>Redman</u> does not apply is that <u>Redman</u> is distinguishable from the instant case because the <u>Redman</u> Court held that SouthTrust complied with the procedural notice provisions discussed above and did not base its ruling on the question of whether SouthTrust complied with the substantive requirements of paragraph 21. This Court disagrees. The Court in Redman addressed two <u>separate</u> and <u>unrelated</u> issues. One was whether the mortgagee satisfied the procedural requirements of section 35-10-13 and paragraph 14. The other was whether the substantive requirements of paragraph 21 were satisfied by constructive notice.

### (a) Procedural Requirements

In regard to the procedural notices, the Court held:

_____

[18] Those paragraphs are identical to paragraphs 14 and 21 in the mortgage before this Court.

SouthTrust complied with § 35-10-13 and with the notice provisions of paragraph 14 of the Mortgage. SouthTrust submitted copies of a letter regarding default sent to the property address. It also submitted copies of the notices of default and impending foreclosure that were sent by regular mail and by certified mail to the Vincent address and to Mr. Redman's Hoover address.

Redman, 765 So 2d. at 634.

However, finding that the procedural requirements were satisfied did not answer the paragraph 21 question for the Alabama Court. After deciding the procedural notice issues, the Alabama Court considered the paragraph 21 issues. The same is true here. Based on the evidence before this Court, as discussed above, this Court found that the defendant here, based on the facts before the Court now, also satisfied the procedural requirements of section 35-10-13 and paragraph 14. But that does not answer the paragraph 21 issues. Consequently, like the Court in Redman, this Court must consider the additional issue before it can resolve the parties' dispute.[19] In that sense, Redman is not distinguishable from the instant case.

The question left is, is Redman distinguishable from the instant case in regard to paragraph 21.[20]

### (b) Paragraph 21 Notice and Redman

In their Motion for Summary Judgment (Proceeding No. 66) the plaintiffs here stated the conclusions:

**It is undisputed that no notice of default was given in accord and as required by paragraph 21 of the plaintiffs' mortgage.**

**It is undisputed that the defendants failed to give the plaintiffs' notice as required by Paragraph 21 of the mortgage.**

The Plaintiffs' Motion for Summary Judgment Against Defendants' Wells Fargo and GE Mortgage on Counts One (Breach of Contract), Two (Wrongful Foreclosure), Three (Conversion) & Four (Trespass), October 9, 2006, Proceeding No. 66 (emphasis in original).

---

[19]Interestingly, one of the primary issues the plaintiffs raised was whether the defendant satisfied the requirement of paragraph 21.

[20]As noted earlier, the language in Redman's paragraph 21 and the language in the instant paragraph 21 are identical.

22

In their <u>Motion for Findings of Fact and Conclusions of Law</u> the plaintiffs wrote:

1.  The plaintiffs would like to establish whether this Court has evidence and/or conclusions of law to dispute the fact that the defendants failed to give the notice in Paragraph 21 of the mortgage attached to said summary judgment motion and incorporated herein prior to accelerating the plaintiffs' mortgage.

2.  The plaintiffs seeks this Court's guidance on whether, under Alabama law, the Paragraph 21 notice is a condition precedent to acceleration.

<u>Motion for Findings of Fact and Conclusions of Law</u>, February 9, 2007, Proceeding No. 90.

Clearly, the issue the plaintiffs place at the forefront of the proceeding before this Court is whether the defendant satisfied the substantive requirements of paragraph 21. Because this Court has already found that the defendant, based on the facts before the Court now, satisfied the procedural requirements of section 35-10-13 and paragraph 14, the sole issue remaining here, like it was in <u>Redman</u> after the Court there found that the lender had satisfied the procedural notice requirements, was - did the lender comply with paragraph 21.  <u>That</u> was the issue in Redman and <u>that</u> is the issue here.  In regard to that issue, the Court in <u>Redman</u> wrote:

This Court has held, in other contexts, that to close one's eyes to facts and circumstances reasonably apparent to the ordinary person does not relieve one of the responsibility of what the facts would have revealed if the inquiry they inspired had been made. For example, an automobile dealer may not ignore factory damage to an automobile and thereby avoid joint liability with the manufacturer for fraud (<u>Chrysler Corp. v. Schiffer</u>, 736 So.2d 538 (Ala.1999)); nor can a dealer, when purchasing a used car for resale, close its eyes to the true mileage and condition of a car and rely instead on an odometer reading that is patently incorrect in light of the obvious state of the car. See <u>Hargrove v. Cantrell</u>, 547 So.2d 488 (Ala.1989). An architect cannot avoid liability by closing his or her eyes to "construction defects that even the most perfunctory monitoring would have prevented" (<u>Watson, Watson, Rutland/Architects, Inc. v. Montgomery County Board of Educ.</u>, 559 So.2d 168, 173 (Ala.1990)); and "[a] purchaser simply cannot '[close] his eyes where ordinary diligence requires him to see,' and expect to recover in a fraudulent misrepresentation action." <u>Hughes v. Cloud</u>, 504 So.2d 734, 735 (Ala.1987). This Court has held that notice sufficient to preclude a bona fide purchase for value "may be actual or constructive or may consist of knowledge of facts that would cause a reasonable person to make an inquiry that would reveal the interest of a third party." <u>Malcom v. Wilson</u>, 534 So.2d 241, 243 (Ala.1988).

23

These holdings illustrate this Court's consistent disposition of issues involving parties' deliberately being uninformed in an effort to avoid liability. Thus, **our inquiry here is whether Mrs. Redman and Burns, as reasonable persons, had notice of facts sufficient to cause them to make further inquiry as to the status of Mrs. Redman's mortgage account with SouthTrust**. We conclude that they did. It is clear from the record that the defendants closed their eyes to avoid "discovery" of the truth that was reasonably apparent: that the Mortgage was seriously in arrears and that SouthTrust was ready to legally foreclose on the property in Vincent.

**Mrs. Redman and Burns are also held to have notice of everything to which a reasonable inquiry would have led**. That SouthTrust, according to Mrs. Redman, would not talk to her because her name was not on the Note does not relieve Mrs. Redman of her responsibility under the Mortgage. A monthly mortgage payment and a monthly bank statement were obligations of which Mrs. Redman was aware, and whether she received documentary information about either did not lessen her responsibility to know the status of each account. **To argue ignorance of the status of the Mortgage or of her checking account was to close her eyes in an effort to avoid discovering the truth. Mrs. Redman had sufficient notice of the default and the foreclosure sale**, and the summary judgment in favor of SouthTrust and Federal on the claims of fraud and wrongful foreclosure was proper.

Id. at 634-35 (emphasis added).

Mrs. Redman, like the plaintiffs here, specifically raised the question of whether the lender's notice to her was sufficient. The highlighted portion above clearly identifies the **exact** issue the Alabama Supreme Court considered determinative of that question. Based on that issue and the facts, the Alabama Court's holding, as quoted above, is quite clear. It reads, "Mrs. Redman had sufficient notice of the default and the foreclosure sale...."

Id. at 635.

These are also the exact issues this Court must consider in the instant case. Therefore, on this point, Redman is not distinguishable.

### (2) Is the Constructive Notice Discussion in Redman Dictum?

The plaintiffs' second basis of their argument for why Redman does not apply is that the Alabama Supreme Court's discussion of constructive notice is dictum. This Court disagrees. The Alabama Court's discussion of constructive notice was not,

24

"remarks made in a judicial opinion that are not binding law." Bryan A. Garner, A Dictionary of Modern Legal Usage 275 (2d ed. 1995). It was a substantive part of the basis for the Court's decision and it is binding here. The concurring opinion of Justice Champ Lyons, Jr. confirms this conclusion and that the Court considered constructive notice in reaching its decision. Justice Lyons wrote:

> I concur, but I write to address one issue.
>
> Under the Redmans' mortgage, the term "borrower" is defined so as to include both Mr. and Mrs. Redman. While Mr. Redman testified that he notified SouthTrust of his change of address, SouthTrust never received any information as to a change of address for Mrs. Redman, who still lived at the property address. Paragraph 14 of the mortgage requires that notice of foreclosure be directed to the property address or to any other address the borrower designates by notice to lender. The record contains no evidence indicating that Mrs. Redman, also a borrower, ever notified SouthTrust of a change of address. Consequently, if we are to exact strict compliance with paragraph 14, the notice of foreclosure should have been sent to the property address. According to the undisputed evidence, it is clear that SouthTrust did not comply with the terms of the contract in sending its foreclosure notices.
>
> Other jurisdictions require compliance with contractual terms and statutory provisions. See, e.g., Houston First Am. Sav. v. Musick, 650 S.W.2d 764 (Tex.1983). However, Texas allows proof of actual notice to suffice, notwithstanding noncompliance with more stringent notice provisions in the mortgage. Jasper Fed. Sav. & Loan Ass'n v. Reddell, 730 S.W.2d 672, 674 (Tex.1987); Houston First Am. Sav., supra. See, also, Ostrow v. Higgins, 722 P.2d 936 (Alaska 1986), for a similar result under Alaska law.
>
> Alabama law is to the contrary. In Bullock v. Bishop, 435 So.2d 24 (Ala.1983), we held that less stringent statutory standards prevail over more stringent contractual requirements. **Therefore, I agree that constructive notice, coupled with compliance with statutory provisions, constituted a defense to this action alleging wrongful foreclosure.**

Redman at 637 (concurring specially) (emphasis added).

Therefore based on the above, the Court finds that the discussion of constructive notice in Redman was not dictum.

Case 04-00250-BGC    Doc 112    Filed 06/27/07    Entered 06/27/07 10:44:43    Desc Main
Document    Page 25 of 41

**(3) Conclusion to the Question of Whether <u>Redman</u> Applies
and the Impact of that Conclusion**

Based on the above, this Court concludes as a matter of law, that <u>Redman</u>
applies to the instant proceeding to resolve the factual question of whether the
defendant satisfied the notice provisions of the parties' mortgage either through actual
or constructive notice. What is the impact of that conclusion?

As stated above, the Court recognized that it had to answer the question of the
application of <u>Redman</u> before it could answer the question of whether there were
genuine issues of material fact regarding constructive notice. Now that this question is
answered, it is clear that there are genuine issues of material fact regarding
constructive notice. What did the plaintiffs know? When did they gain that knowledge?
These are questions central to the specific issues before this Court, issues this Court
cannot resolve without a trial on the merits.

**B. <u>Motion to Certify Summary Judgment Decision as Final Order</u>**

The second specific matter before the Court is the plaintiffs' <u>Motion to Certify
Summary Judgment Decision as Final Order</u> (Proceeding No. 96) pursuant to Rule
54(b) of the Federal Rules of Civil Procedure. That rule is applicable here through Rule
7054 of the Federal Rules of Bankruptcy Procedure.

The plaintiffs' motion reads:

Comes now the plaintiffs, pursuant to Rule 54(b) of the FRCP, and
moves this Court to certify its February 9, 2007 Order as final. As
grounds:

1.      There is no reason for delay of review of said decision.

2.      Said issues raised in the plaintiff's [sic] summary judgment
motion are separate from the remaining issues.

<u>Motion to Certify Summary Judgment Decision as Final Order</u>, filed March 6, 2007,
Proceeding No. 96.

Rule 54(b) reads:

(b) Judgment Upon Multiple Claims or Involving Multiple Parties. When
more than one claim for relief is presented in an action, whether as a
claim, counterclaim, cross-claim, or third-party claim, or when multiple
parties are involved, the court may direct the entry of a final judgment as
to one or more but fewer than all of the claims or parties only upon an

26

express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

Fed. R. Civ. P. 54(b).

The law in this Circuit is, "Rule 54(b) does not empower a court to transform an interlocutory order into a final order for purposes of appeal."  Howard v. Parisian, Inc., 807 F.2d 1560,1566 (11th Cir. 1987).  And as discussed below, an order denying a motion for summary judgment is an interlocutory order.  Therefore, an order may be certified as a final order only if it is final. It may not be certified final if it is not already final.

But, the plaintiffs want this Court to certify the denial of their motion for summary judgment as a final order so they can appeal that order.  This Court cannot.  This Court, "can enter a final judgment on an order under Rule 54(b) only if that order completely disposes of a claim." Id. (emphasis added).  The order must be final.  This Court's February 8, 2007, order did not completely dispose of any claim, and in fact, it did not dispose of any claim, whether completely or not.  All of the nine causes of action raised by the plaintiffs remain viable.  This Court's order did not decide any of them.

In addition, under the law in this Circuit, and almost, if not, everywhere else, "**The denial of summary judgment is interlocutory in nature and thus is not appealable**."  In re Smith, 735 F.2d 459, 461 (11th Cir. 1984) (emphasis added).[21]  The order here was **an order denying a motion for summary judgment, therefore it is an interlocutory order.**  If the plaintiffs wanted to appeal that interlocutory order, they should have filed a motion for leave to appeal pursuant to Rule 8003 of the Federal Rules of Bankruptcy Procedure.[22]  As Rule 8001(b) provides:

---

[21] See also Acton v. City of Columbia, Mo., 436 F.3d 969 (8th Cir. 2006); Hand v. UNUM Provident Corp., 202 Fed.Appx. 689 (5th Cir. 2006); Gobert v. Caldwell, 463 F.3d 339 (5th Cir. 2006); Fernandez v. Bankers Nat. Life Ins. Co., 906 F.2d 559 (11th Cir. 1990). Ardoin v. McDermott & Co., 641 F.2d 277 (5th Cir. Unit A 1981).

[22] As explained above, the plaintiffs docketed their Motion to Certify Summary Judgment Decision as Final Order (Proceeding No. 96) as a motion for leave to appeal.  The motion was not however, a motion for leave to appeal.  It was, as it stated on its face, a motion under Rule 54(b).

27

An appeal from an interlocutory judgment, order, or decree of a bankruptcy judge as permitted in 28 U.S.C. § 158(a)(3) shall be taken by <u>filing a notice of appeal</u>, as prescribed in subdivision (a) of this rule, <u>accompanied by a motion for leave to appeal</u> prepared <u>in accordance with Rule 8003</u> and with proof of service in accordance with Rule 8008.

Fed. R. Bankr. P. 8001(b) (emphasis added). But, for such an appeal to be timely, Rule 8002(a) requires, "The notice of appeal shall be filed with the clerk within 10 days of the date of the entry of the judgment, order, or decree appealed from." Fed. R. Bankr. P. 8002(a).

Because the plaintiffs did not file either a notice of appeal or a motion for leave to appeal within the 10-day period, they may not do so now.[23] And as this Court stated above, it is prohibited from treating the <u>Motion to Certify Summary Judgment Decision as Final Order</u> (Proceeding No. 96) as such.

Therefore, first, the filed motion under Rule 54(b) must be denied because this Court's order was not final and cannot be made final. Second, any motion for leave to appeal would at this point be untimely.

## C. <u>Motion to Strike Jury Demand</u>

The third, and final, specific matter before the Court is the defendant's <u>Motion to Strike Jury Demand</u> (Proceeding No. 94).

The plaintiffs filed their original complaint on December 30, 2005. They included five causes of action. Those were:

(1)     Count One - Breach of Contract;
(2)     Count Two - Wrongful Foreclosure;
(3)     Count Three - Conversion;
(4)     Count Four - Trespass;
(5)     Count Five - Violation of the Automatic Stay

The plaintiffs filed their amended complaint on August 23, 2006. They included the original five counts and added four counts. The additional counts were:

(6)     Count Six - Estoppel
(7)     Count Seven - Fraud
(8)     Count Eight - Unjust Enrichment
(9)     Count Nine - Breach of Fiduciary Duty.

---

[23]The Court's order was entered February 8, 2007. The pending motion was filed March 6, 2007. Therefore, even if it were considered a motion for leave to appeal, it would be untimely.

28

The Court's consideration of the motion to strike and the jury demand has two parts.  Those are: (1) The plaintiffs' second demand for a jury trial on the five counts from the original complaint; and (2) the plaintiffs' demand for a jury on the four counts added by the amended complaint.

## 1.  The Plaintiffs' Second Demand for a Jury Trial
## on the Original Five Counts

As a general rule, a right to a jury trial that was waived because a demand was not timely, cannot be revived with a second demand.  Also, as a general rule, new causes of action pleaded in an amended complaint cannot support another jury demand if they are only new theories based on the same facts, rather than new issues. As discussed below, this Court finds that both general rules apply here.

The plaintiffs filed their original complaint on December 30, 2004.  They did not make a demand for a jury trial in that pleading.  The defendant filed an answer to that complaint on March 4, 2005.  (Proceeding No. 5).  On September 30, 2005, nine months after filing that complaint, and seven months after the defendant's answer, the plaintiffs filed their original Demand for Jury Trial.  (Proceeding No. 26).  On October 4, 2005, the defendant filed a Motion to Strike Plaintiffs' Demand for Jury Trial.  (Proceeding No. 27).  After a hearing, this Court entered an order on November 18, 2005, based on Rule 38 of the Federal Rules of Civil Procedure that denied the demand for a jury trial because that demand was not timely filed.

Rule 38, applicable to this adversary proceedings through Rule 9015 of the Federal Rules of Bankruptcy Procedure, provides that a demand for a jury trial must be made either at the commencement of the case or within ten days after service of the answer to the complaint. It reads:

> Any party may demand a trial by jury of any issue triable of right by a jury by (1) serving upon the other parties a demand therefor in writing at any time after the commencement of the action and not later than 10 days after the service of the last pleading directed to such issue, and (2) filing the demand as required by Rule 5(d). Such demand may be indorsed upon a pleading of the party.

Fed. R. Civ. P. 38(b).

As stated above, the plaintiffs filed their original complaint on December 30, 2004.  An answer was filed on March 4, 2005.  The first jury demand was not filed until September 30, 2005.  Consequently, that jury demand was not timely, and the plaintiffs waived their right to a jury trial.

29

That waiver has a direct impact on the demand made in the amended complaint. In <u>LaMarca v. Turner</u>, 995 F.2d 1526 (11th Cir. 1993), Chief Circuit Judge Gerald Tjoflat explained:

> A party may, however, waive this right by failing to make a timely demand upon the courts. Under Rule 38, as to "any issue triable of right by a jury," waiver occurs ten days after "service of the last pleading directed to such issue." Fed.R.Civ.P. 38(b), (d); see <u>Guajardo v. Estelle</u>, 580 F.2d 748, 752-53 (5th Cir.1978). Such waivers apply only to the issues raised by the pleadings; subsequent amendments to the pleadings can raise "new issues" for which the right to a jury remains.

<u>Id</u>. at 1545-46.

Therefore, if the demand in the amended complaint for the five original counts is to revive the waived jury trial, certain criteria must be met. In this case, those criteria were not met and this Court must again deny the plaintiffs demand for a jury trial for the <u>original five counts</u>, as made in their amended complaint. The plaintiffs' amended complaint simply restated the original five counts. Under the law in this Circuit, that is not enough. Therefore the waived right to a jury was not revived as to the original counts as they appeared in the amended complaint. Consequently, the Court finds that the plaintiffs are not entitled to a jury trial on the first give counts of their amended complaint. See also <u>LaMarca v. Turner</u>, 662 F. Supp. 647 (S.D. Fla. 1987).

However, as Judge Tjoflat points out, a right to a jury trial once waived may be revived for any "new issues" raised in amended pleadings. <u>Id</u>. Whether the counts added by the amended complaint raised new issues is discussed below.

## 2. The Plaintiffs' Demand for a Jury Trial on the Four Counts Added by the Amended Complaint

In summary, as discussed below, the plaintiffs are not, <u>for two reasons</u>, entitled to a jury trial on the four "new" counts added by their amended complaint.

One, the four counts added by the amended complaint are only new theories based on the same facts. They do not raise any new issues. Therefore they are not triable to a jury.

Two, the Seventh Amendment right to a jury trial extends only to legal suits at common law, not to claims which were or are equitable in nature. All of the plaintiffs' additional counts are equitable in nature. Therefore they are not triable to a jury.

Each of the above is discussed in detail below.

30

### a. The Four New Counts Do Not Raise any New Issues

As explained above, the main inquiry in determining if an already waived right to a jury trial can be revived depends on whether the amended allegations raise "new issues," or support their own right to a jury trial. That of course is a factual question. The question then is, are the facts from the original complaint the same as those in the amended complaint. If they are, no new issues have been raised, and the right to a jury trial is not revived or supported. Lutz v. Glendale Union High School, 403 F.3d 1061 (9th Cir. 2005).

Writing for the court in Trixler Brokerage Co. v. Ralston Purina Co., 505 F.2d 1045 (9th Cir. 1974), Circuit Judge John Kilkenny explained:

> Manifestly, the issue contemplated by the Rule [Rule 38(b)] is one of fact. When read in context, the word issue must have been intended by the Supreme Court to mean nothing other than an issue of fact. Obviously, appellant would not be demanding a jury trial on an issue of law. A theory of recovery, as distinguished from an issue of fact, in normal parlance presents a question of law. Even a casual reading of the applicable subdivision of the Rule makes it clear that the issue on which demand may be made for a jury trial is not created until service of the 'last pleading directed to such issue.' The theory of a case relates to the ultimate basis of liability, rather than to an issue created by the pleadings. An issue of fact does not exist unless there is an allegation and a responsive denial. A theory of recovery exists from the outset, irrespective of a responsive pleading. A word, such as issue, with a fixed legal meaning is presumed to have been used in that sense. Bradley v. United States, 410 U.S. 605, 609, 93 S.Ct. 1151, 35 L.Ed.2d 528 (1973); Barber v. Gonzales, 347 U.S. 637, 74 S.Ct. 822, 98 L.Ed. 1009 (1954). Moreover, the use of the word issue, in these circumstances, would imply the exclusion of the word theory. Matheson v. Armbrust, 365 U.S. 870, 81 S.Ct. 904, 5 L.Ed.2d 860 (1961); Arley v. United Pacific Ins. Co., 379 F.2d 183 (CA9 1967), cert. denied, 390 U.S. 950, 88 S.Ct. 1039, 19 L.Ed.2d 1140 (1968). We decline to follow Cataldo.

Id. at 1050 (parenthetical added).

Relying on Trixler, the court in Lutz v. Glendale Union High School, 403 F.3d 1061 (9th Cir. 2005) further refined the standards to apply. Writing for the court, Circuit Judge Alex Kozinski explained:

> Our case law is clear, though, that "the presentation of a new theory does not constitute the presentation of a new issue on which a jury trial should be granted [as of right] under ... Rule 38(b)." Trixler Brokerage Co. v. Ralston Purina Co., 505 F.2d 1045, 1050 (9th Cir.1974). Rather, Rule

31

38(b) is concerned with issues of fact. See Las Vegas Sun, Inc. v. Summa Corp., 610 F.2d 614, 620 (9th Cir.1979). And there is no significant difference in the facts necessary to support Lutz's original ADA claim and those supporting her new claims.

Id. at 1066.

The same question was addressed by the Court of Appeals for the Eleventh Circuit in In re Financial Federated Title & Trust, Inc., 309 F.3d 1325 (11th Cir. 2002). Writing for the court, Circuit Judge James C. Hill explained:

> This issue is not one of first impression in this circuit. In LaMarca v. Turner, 995 F.2d 1526 (11th Cir.1993), this court held that where new plaintiffs raised new issues and claims, defendant's initial waiver of a jury did not preclude him from making an effective jury demand with respect to the new issues and new claims. Id. at 1545-46. See Burns v. C. Lawther, 44 F.3d 960 (11th Cir.1995); Borgh v. Gentry, 953 F.2d 1309, 1311 (11th Cir.1992)("[A] court's discretion [to deny a jury trial] is very narrowly limited and must, wherever possible, be exercised to preserve jury trial." (quoting Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 510, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959)); Guajardo v. Estelle, 580 F.2d 748 (5th Cir.1978)(even if a party has waived its right to a trial by jury, that right may be revived, at least as to newly asserted claims, upon the filing of an amended complaint which raises new issues); Moore v. United States, 196 F.2d 906, 908 (5th Cir.1952)(**amended complaint did not revive any waived right to jury trial because it did not raise any new issues which carry a Seventh Amendment right to jury trial**).

Id. at 1330-31.[24]

What then are the theories of recovery the plaintiffs assert here? Were the four added counts based on facts different from the five counts in the original complaint? Did the plaintiffs raise any new issues in their amended complaint that would entitle the plaintiffs to a jury trial?

The basic facts in the amended complaint are the same as those in the original complaint. There are no new issues, only new theories. The plaintiffs contend that the plaintiffs were not in default on their mortgage payments and that the defendant's

---

[24] See CNH America, LLC v. Venture Industries Corp., 344 B.R. 526 (E.D. Mich. 2006) ("Courts have normally allowed a new claim for a jury trial to override a previous waiver only when new issues are added to a case. See Orlick v. Kozyak ( In re Fin. Federated Title & Trust, Inc.), 309 F.3d 1325, 1329 (11th Cir.2002).")

32

action in foreclosing on the property was wrongful. Every count in the original complaint and every count in the amended complaint is based on those theories. The plaintiffs allege: breach of contract; wrongful foreclosure; conversion; trespass; violation of the automatic stay; estoppel; fraud; unjust enrichment; and breach of fiduciary duty. Every allegation comes from the defendant's foreclose on the plaintiffs' property.

Yes, there are variations such as the question of whether the defendant provided sufficient notice to satisfy the requirements of paragraph 21 of the mortgage. But the issue in every one is the same. Did the defendant wrongfully foreclose? Only the theories are different.

The conclusion on this issue then must be, the plaintiffs' previously waived right to a jury trial was not revived by the amended demand for a jury trial and no new right is supported. Therefore the Court must deny a jury trial on the four added counts for this reason.

### b.  The Right to a Jury Does not Extend
### to Claims Which Are Equitable in Nature

Notwithstanding the above, assuming for argument that the new counts did raise new facts and new issues. Are the plaintiffs otherwise entitled to a jury trial on these new counts? The answer is no. All four of the added counts are equitable in nature and therefore not triable to a jury.

The general rule is, a right to a jury does not extend to claims which are equitable in nature. CBS Broadcasting, Inc. v. EchoStar Communications, 450 F.3d 505, 517 N.25 (11th Cir. 2006); Ford v. Citizens and Southern Nat. Bank, 928 F.2d 1118, 1121 (11th Cir. 1991). See Bennett v. Genoa AG Center, Inc. (In re Bennett), 154 B.R. 126 (Bankr. N.D.N.Y. 1992) for a discussion of the law-equity test and its application in bankruptcy proceedings. See also Shelton v. Shelton, 376 So.2d 740, 741 (Ala .Civ. App.1979)("Where a plaintiff's claim is equitable in nature there is no right to a jury trial.").

Applying that general rule to this proceeding, as discussed below, the Court finds that all of the plaintiffs' amended counts are equitable in nature and none are triable to a jury.

Specifically, the Seventh Amendment provides, "In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved...." U.S Const. amend. VII. The Supreme Court of the United States has, consistently interpreted the phrase "Suits at common law" to refer to, "suits in which legal rights were to be ascertained and determined, in contradistinction to those where equitable rights alone were recognized, and equitable remedies were administered...." Parsons v. Bedford, 3 Pet. 433, 447, 7 L.Ed. 732 (1830)." Granfinanciera, S.A. v. Nordberg, 492 U.S. 33,41 (1989).

In <u>Granfinanciera</u>, the Court analyzed the two factors that should be balanced in making that determination. The Court explained:

> The form of our analysis is familiar. "First, we compare the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity. Second, we examine the remedy sought and determine whether it is legal or equitable in nature." <u>Tull v. United States</u>, 481 U.S. 412, 417-418, 107 S.Ct. 1831, 1835, 95 L.Ed.2d 365 (1987) (citations omitted). The second stage of this analysis is more important than the first. <u>Id</u>., at 421, 107 S.Ct., at 1837. <u>If, on balance</u>, these two factors indicate that a party is entitled to a jury trial under the Seventh Amendment, we must decide whether Congress may assign and has assigned resolution of the relevant claim to a non-Article III adjudicative body that does not use a jury as factfinder.

<u>Id</u>. at 42 (emphasis added) (footnote omitted).

### c. Analysis of Each of the Plaintiffs' Additional Claims

This Court has applied the <u>Granfinanciera</u> two-prong test to each of the four counts the plaintiffs added through their amended complaint.

### (1) Estoppel - Count 6

"Estoppel is an equitable doctrine which prevents a party from raising a claim or taking a legal position when his conduct with regard to that claim is contrary to his position." <u>Matter of Garfinkle</u>, 672 F.2d 1340, 1346-47 (11th Cir. 1982). Consequently, there is no right to a jury trial on this cause of action.

Applying the two-prong test from <u>Granfinanciera, S.A. v. Nordberg</u>, 492 U.S. 33,41 (1989), the Court finds, on balance, the plaintiffs are not entitled to a jury trial on their estoppel claim.

### (2) Fraud - Count 7

The commentators in Wright & Miller identify the questions involved in addressing a jury demand for a fraud action. They write:

> Charges of fraud raise difficult questions concerning the right to jury trial, because fraud "is not distinctively either a legal issue or one of an equitable nature," and **the jury right turns on the remedy sought and the context in which the claim of fraud arises**.

34

When the only remedy sought for fraud is damages, the action is legal in nature and there is a right to jury trial. More complicated problems arise when a party, instead of demanding damages or in addition to them, seeks to cancel or rescind a transaction because it was tainted with fraud.

9 Wright & Miller, Federal Practice and Procedure, Civil 2d §2311 (footnote omitted) (emphasis added).

The questions then are, what do the plaintiffs seek, and what is the context where the alleged fraud arose?

The fraud count in the plaintiffs' amended complaint reads:

28. The Plaintiffs hereby incorporates [sic] paragraphs one through twenty-seven as is fully set out herein.

29. On August 30, 2004 the defendant held out to the public that the plaintiffs' were in default of their mortgage. The defendant concealed the fact that it continued to solicit, received and apply payments through August 2004. The defendant misrepresented the status of the plaintiffs' mortgage in order to secure as many pre-foreclosure payments as possible.

30. When the plaintiffs called to check the status of their mortgage, the defendant concealed the fact that its position was that the plaintiffs' were in default as of November 2003 and it solicited, received and applied payments in spite of its intent to foreclose on the property.

31. Although the plaintiff's post-relief from stay mortgage payments were more than their actual mortgage note and although the plaintiffs were paying for their own homeowner's insurance and taxes, the defendant concealed the fact that its position was that the post relief from petition payments were only "partial" payments. The defendant continued to solicit, receive and apply the "so-called" partial payments in spite of the fact that it intended to foreclose on the plaintiffs' property.

WHEREFORE, the Plaintiffs pray that this Court will enter an Order declaring that the Plaintiffs are entitled to relief, ordering defendant to pay the Plaintiffs' costs and attorney's fees, entering a finding, order or declaration that the Plaintiffs have good title in and to the property, awarding plaintiffs punitive and compensatory damages in the amount of One Million Dollars ($1,000,000.00) and ordering such other relief that the Plaintiffs are entitled to.

First Amended Adversarial Complaint for Wrongful Foreclosure, Breach of Contract, Conversion, Trespass & Violation of Automatic Stay, Estoppel, Fraud, Unjust Enrichment & Breach of Fiduciary Duty, August 23, 2006, Proceeding No. 59.

Based on the pleading, particularly that the plaintiffs' prayer for relief under their fraud count is <u>identical</u> to their prayer for relief in each of the other eight counts, the Court finds that the plaintiffs' seek, as described above in Wright & Miller, "to cancel or rescind a transaction because it was tainted with fraud." 9 Wright & Miller, Federal Practice and Procedure, Civil 2d §2311. And as discussed below, that action is equitable and therefore not entitled to a trial by jury.

In Alabama, a mortgagor's interest in property is <u>equitable</u>. The Court in <u>In re Smith</u>, 85 F.3d 1555 (11th Cir. 1996) explained:

> In Alabama, a mortgagee holds legal title to the real property subject to the mortgagor's equitable right of redemption. Ala. Code § 35-10-26 (1993). Alabama foreclosure law provides that, upon a foreclosure sale, a mortgagor's equitable right of redemption ends. <u>FDIC v. Morrison</u>, 747 F.2d 610, 613 (11th Cir.1984), cert. denied, 474 U.S. 1019, 106 S.Ct. 568, 88 L.Ed.2d 553 (1985). "[F]oreclosure of a mortgage extinguishes the debt to the amount of the purchase price, if that amount is less than the debt, or extinguishes the entire debt if the purchase price is more than that amount." <u>Davis v. Huntsville Prod. Credit Ass'n</u>, 481 So.2d 1103, 1105 (Ala.1985). The purchaser at the foreclosure sale then holds legal title to the property, subject to the mortgagor's one year statutory right of redemption. Ala. Code § 6-5-248(a) & (b).

<u>Id</u>. at 1558-59.

The plaintiffs' fraud action here is an attempt to protect that interest, whether it was a pre-foreclosure equitable right of redemption or a post-foreclosure statutory right of redemption.[25]

The bankruptcy court in <u>In re Bennett</u>, 154 B.R. 126 (Bankr. N.D.N.Y. 1992) described a similar situation. The opinion there reads:

> In the fifth cause of action the Debtor seeks a determination that the Farm Credit foreclosure sale relative to certain real property constituted a fraudulent conveyance under Code § 548. The Debtor seeks a return by Genoa of all property sold at that foreclosure sale.
>
> This cause of action, like the third, is a core proceeding under 28 U.S.C. § 157(b)(2)(H), which specifically identifies actions to determine and recover fraudulent conveyances as core proceedings.

---

[25] The parties agree that if the foreclosure was valid, the plaintiffs' statutory right of redemption has expired.

Although the same general analysis applies to this action as to the third cause of action, it is not clear that this is a legal claim because the relief sought involves the reconveyance of real property to the estate. As stated above, "where the cause of action seeking monetary relief is integral to the equitable relief sought, such as the ... reconveyance of property ... the action lies in equity with no right of jury trial." See Matter of Paula Saker & Co., Inc., 37 B.R. at 807-808.

In this action, the only relief sought is the reconveyance of property which, as supported by the above statement, is an equitable form of relief. As previously noted, it is the form of relief that is most significant to the law-equity determination, not merely the theory pleaded. See Matter of Saker, 37 B.R. at 807-808.

Furthermore, the Debtor points out that this claim basically seeks a **rescission** of the foreclosure sale and a reconveyance of the property based on the fraudulent conduct of the Defendants. (See Plaintiff's Memorandum of Law, p. 3). It has been held that "claims grounded in fraud are not distinctively legal or equitable, and thus 'the jury right turns on the remedy sought and the context in which the claim of fraud arises.' " In re Friedberg, 131 B.R. 6, 12 (Bankr.S.D.N.Y.1991) (quoting Wright & Miller Federal Practice and Procedure § 2311). The Debtor further cites the Wright and Miller commentary as stating that "especially in situations when the claimant only can be made whole by the reconveyance of real estate ... the claim for rescission is equitable and there is no right to a jury."

The Court thus concludes that the fifth cause of action, while a core matter, is equitable in nature and inappropriate for jury trial.

Id. (emphasis added). Footnote 8 to that section reads, "While this cause of action seeks relief which impacts on both Farm Credit and Genoa, **the Court considers it to be focused primarily upon setting aside the foreclosure sale and recovery of the property** from Genoa." Id. (emphasis added).[26]

But unlike Bennett, the plaintiffs here also seek damages. Does that change the dynamics of the situation? In the context of this case, the answer is no. A further discussion in Bennett is helpful. After reviewing the test from Granfinanciera, that court wrote:

---

[26] If the plaintiffs' action is considered one of rescission of the foreclosure sale, clearly, "an action for rescission is equitable, triable by the court without a jury." Phillips v. Kaplus 764 F.2d 807, 812 (11th Cir. 1985).

37

However, the U.S. Supreme Court has also indicated that an award of monetary relief need not necessarily constitute legal relief. See Chauffeurs, 494 U.S. at 568-70, 110 S.Ct. at 1347 (citing Curtis v. Loether, 415 U.S. 189, 195-97, 94 S.Ct. 1005, 1009, 39 L.Ed.2d 260 (1974)). "For example, where a cause of action seeking monetary relief is integral to the equitable relief sought, such as the imposition of a constructive trust ... the action lies in equity with no right of jury trial." American Universal Ins. Co., 821 F.2d at 1356 (quoting Matter of Paula Saker & Co., 37 B.R. 802, 808 (Bankr.S.D.N.Y.1984)). Additionally, damages have been characterized as equitable relief where they are restitutional in nature, such as, in actions for disgorgement of improper profits. See Chauffeurs, 494 U.S. at 570-72, 110 S.Ct. at 1348.

Id. at 133.

The same applies here. What predominates is the equitable remedies that could find the foreclosure to be wrongful or set aside the foreclosure. The plaintiffs' request for damages is incidental. This is especially clear, as was pointed out above, that the plaintiffs' prayer for relief in their fraud count is identical to the prayer in every other count.

Therefore, based on the above, the Court finds that the plaintiffs' fraud count, like the other three counts added by the amended complaint is equitable.

Applying the two-prong test from Granfinanciera, S.A. v. Nordberg, 492 U.S. 33, 41 (1989), the Court finds that, on balance, the plaintiffs are not entitled to a jury trial on their fraud claim.[27]

### (3)  Unjust Enrichment - Count 8

Unjust enrichment is an equitable remedy. Morrison v. Allstate Indem. Co., 228 F.3d 1255, 1264 (11th Cir. 2000); Chevron U.S.A., Inc. v. Belco Petroleum Corp., 755 F.2d 1151, 1154 (5th Cir. 1985), reh'g denied, 761 F.2d 695 (5th Cir. 1985), State

---

[27] While this Court has not addressed the substance of the fraud count, in addressing the procedural question of whether a jury trial is available for that count, the Court does not imply that the plaintiffs have properly pleaded fraud. In Alabama, in order to obtain a judgment based on fraud, the plaintiff must prove: (1) that the defendant made a false representation; (2) that the false representation concerned a material existing fact; (3) that the plaintiff relied upon the false representation; and (4) that the plaintiff was damaged as a proximate result of his or her reliance upon the false representation. George v. Associated Doctors Health & Life Ins. Co., 675 So.2d 860, 862 (Ala.1996). As quoted above, the plaintiffs have not pleaded those elements. Consequently, there may not even be a fraud action involved here and the discussion of whether the plaintiffs are entitled to a jury trial for that action would be moot.

38

<u>Farm Fire & Cas. Co. v. Evans</u>, Case No. 1021370, 2006 WL 1667657at *10 (Ala. June 16, 2006). Consequently, there is no right to a jury trial on this cause of action.

Applying the two-prong test from <u>Granfinanciera, S.A. v. Nordberg</u>, 492 U.S. 33,41 (1989), the Court finds, on balance, the plaintiffs are not entitled to a jury trial on their unjust enrichment claim.

### (4) Breach of Fiduciary Duty - Count 9

Historically, an action for the breach of a fiduciary duty was an equitable remedy. Writing for the Court in <u>Chauffeurs, Teamsters and Helpers, Local No. 391</u>,494 U.S. 558, 567 (1990), Justice Thurgood Marshall explained, "The Union next argues that respondents' duty of fair representation action is comparable to an action by a trust beneficiary against a trustee for breach of fiduciary duty. **Such actions were within the exclusive jurisdiction of courts of equity**. 2 Story, supra, § 960, p. 266; Restatement (Second) of Trusts § 199(c) (1959)."

Applying the two-prong test from <u>Granfinanciera, S.A. v. Nordberg</u>, 492 U.S. 33,41 (1989), the Court finds, on balance, the plaintiffs are not entitled to a jury trial on their breach of fiduciary claim.

### D. Conclusion on the Plaintiffs' Right to a Jury Trial

The plaintiffs are not entitled to a jury trial on the first five counts of their amended complaint because those were the original counts pleaded in their original complaint for which they already waived their right to a jury trial. The subsequent demand for a jury trial in their amended complaint cannot revive the earlier untimely demand for a jury on counts that were pleaded in an original complaint.

The plaintiffs are not entitled to a jury trial on any of the four new counts because the amended demand for a jury trial may be allowed only for "new issues" raised in amended pleadings. The additional counts did not raise new issues but were only new theories on old issues.

The plaintiffs are not entitled to a jury trial on any of the four new counts because those additional counts are all equitable in nature where the Seventh Amendment right to a jury trial only extends to suits at common law, not to claims which are equitable in nature.

### V. CONCLUSIONS

In regard to the plaintiffs' original <u>Motion for Summary Judgment</u> (Proceeding No. 66), this Court is bound by the law in this Circuit which in summary is:

"The court may not resolve any material factual dispute, but must deny the motion and proceed to trial if it finds that such an issue exists." Environmental Defense Fund v. Marsh, 651 F.2d 983, 991 (5th Cir. 1981).

"A trial court must not decide any factual issues it finds in the records [on summary judgment]; if factual issues are present, the court must deny the motion and proceed to trial." Warrior Tombigbee Transp. Co., Inc. v. M/V Nan Fung, 695 F.2d 1294, 1296 (11th Cir.1983) (parenthetical added).

"If reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment." Id. at 1296-1297.

"It is not the court's role to weigh conflicting evidence or to make credibility determinations; the non-movant's evidence is to be accepted for purposes of summary judgment." Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996).

"'If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial.'" Tullius v. Albright, 240 F.3d 1317, 1320 (11th Cir. 2001)(quoting Clemons v. Dougherty County, 684 F.2d 1365, 1369 (11th Cir.1982)).

"In ruling on a Rule 56 motion, the district court may not weigh the evidence or find facts." Morrison v. Amway Corp., 323 F.3d 920, 924 (11th Cir. 2003).

"Issues of credibility and the weight afforded to certain evidence are determinations appropriately made by a finder of fact and not a court deciding summary judgment." McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1240 n.7 (11th Cir. 2003).

In regard to the plaintiffs' Motion for Findings of Fact and Conclusions of Law (Proceeding No. 90), the Court attempted to clarify its denial of the plaintiffs' original Motion for Summary Judgment (Proceeding No. 66) by making what findings of fact and conclusions of law, notwithstanding that the denial of the original motion was because there are genuine issues of material fact.

In regard to the Motion to Certify Summary Judgment Decision as Final Order (Proceeding No. 96) , the Court found that a denial of a motion for summary judgment is an interlocutory order and that the Court is prohibited from making that order a final order by way of Rule 54(b). The plaintiffs' remedy in that regard was to file a motion for leave to appeal the interlocutory order; however, they did not, and they are time barred from doing so now.

In regard to the defendant's <u>Motion to Strike Jury Demand</u> (Proceeding No. 94) , the Court found the five counts taken from the original complaint cannot revive the waived right to a jury trial.  In addition, the four counts added by the amended complaint did not raise any new issue, were all equitable remedies, and are triable by the Court, not a jury.

A separate order will be entered in conformity with this Memorandum Opinion.

Dated: June 27, 2007                         /s/Benjamin Cohen                         
                                             BENJAMIN COHEN
                                             United States Bankruptcy Judge

BC:pb